UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

— against —

JAMES JOHNSON,

*Defendant.*

**No. 98-CR-860(7) (ARR)**

**Not for print or electronic publication**

**Opinion & Order**

ROSS, United States District Judge:

Defendant, James Johnson, brings his second motion for compassionate release on the grounds that his medical conditions, combined with the high number of COVID-19 cases and harsh conditions at FCI Schuylkill, are extraordinary and compelling reasons warranting release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The government opposes. I deny Mr. Johnson's motion for the reasons set forth below.

## BACKGROUND

Mr. Johnson is serving a sentence of 25 years' imprisonment on the following charges: conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); unlawful use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and murder through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). Amended Crim. J., ECF 450. He is currently incarcerated at the Bureau of Prisons ("BOP") medium-security facility in Schuylkill, Pennsylvania ("FCI Schuylkill") and is scheduled to be released on April 28, 2023. *Id.*; *Inmate Locator*, BOP, https://www.bop.gov/inmateloc (last visited Mar. 30, 2021).

1

Mr. Johnson, now 42 years old, has at various times suffered from a heart murmur, elevated blood pressure, allergic rhinitis, and an elevated creatinine level. Def.'s Suppl. Mem. 2–3, ECF No. 518. His medical records specifically note that his elevated blood pressure was "[without] hypertension," and the condition is categorized as "resolved." Def.'s Med. Records 35, ECF No. 517-6 (filed under seal). In 2015, his blood test results noted an elevated creatinine level of 1.4 which may be indicative of kidney impairment. Def.'s Med. Records 3, ECF No. 517-1; Def.'s Suppl. Mem. 2. There is no evidence to suggest that Mr. Johnson's creatinine levels have remained elevated since 2015; in 2020, he declined follow-up bloodwork. Gov't's Opp'n 11, ECF No. 519.

Mr. Johnson brought his first *pro se* motion for compassionate release on April 27, 2020 on the grounds that his medical conditions and family circumstances warranted release. Def.'s First Mot. Compassionate Release, ECF No. 506. In that motion, he did not raise his seasonal allergies or elevated creatinine level. *Id.* I denied his motion on May 5, 2020, finding he had not established extraordinary or compelling reasons for release. *United States v. Johnson*, No. 98-CR-860 (ARR), 2020 WL 2124461, at *2–3 (E.D.N.Y. May 5, 2020).

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier";[1]

---

[1] The government does not counter Mr. Johnson's assertion that he has met the administrative exhaustion requirement, so I assume that he has.

2

(2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting that defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (citation and quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c) is not binding on a district court, *see id.* at *6, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios: first, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia"; and second, where "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes

the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i)–(ii) (2018) ("U.S.S.G.").

Extraordinary and compelling reasons may also exist based on "family circumstances," for example in the event of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* cmt. 1(C). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 3582(c)(1)(A)(ii). The § 3142(g) factors are largely duplicative of

4

those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." *Id.* § 3142(g)(1)–(4).

## DISCUSSION

I must deny Mr. Johnson's motion for compassionate release because he has not established that his newly asserted medical conditions—allergic rhinitis, also known as hay fever, and an elevated creatinine level in 2015—place him at a particularly high risk of serious illness associated with COVID-19. The Centers for Disease Control and Prevention ("CDC") do not include allergic rhinitis on its list of high-risk pre-existing medical conditions. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021). The CDC does state that "[h]aving chronic kidney disease of any stage can make you more likely to get severely ill from COVID-19." *Id.* However, while elevated creatinine levels may indicate kidney impairment, Mr. Johnson has not established that he has been diagnosed with any kidney disease or that his creatinine level has remained elevated since 2015. Therefore, I cannot conclude that he suffers from chronic kidney disease. Without sufficient evidence that Mr. Johnson's medical conditions place him at a particularly high risk of COVID-19 complications, I cannot find these conditions are extraordinary or compelling reasons warranting release. *See United States v. Turnbull*, No. 16-CR-809 (VM), 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020) ("Numerous courts have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."); *United States v. Washington*, No. 14-CR-215 (LJV), 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (finding no extraordinary and compelling reasons for

release when the defendant submitted no medical evidence showing that COVID-19 posed an increased risk to him, despite the presence of COVID-19 at the defendant's facility). However, if Mr. Johnson is willing to participate in follow-up bloodwork, I do urge the government to encourage the Bureau of Prisons to provide adequate care and follow-up testing given the risks associated with kidney disease.

Mr. Johnson also argues that although he is "hardly old" at age 42, his age still places him at an increased risk of COVID-19 complications. Def.'s Suppl. Mem. 3–4. Citing the CDC, Mr. Johnson's counsel writes that "[c]ompared to its base line of 5-17 year olds, Mr. Johnson . . . faces twice the risk of falling ill, fifteen times the risk of hospitalization, and 130 times the risk of dying." *Id.* at 3. However, the fact that Mr. Johnson faces an increased risk compared to people aged five to seventeen does not set him apart from his fellow BOP inmates. *See, e.g.*, *United States v. Pinto-Thomaz*, No. 18-CR-579 (JSR), 2020 WL 1845875, at *2–3 (S.D.N.Y. Apr. 13, 2020) (recognizing that concerns about the spread of COVID-19 in a crowded prison were justified but finding no extraordinary and compelling reasons when the defendants were "no different from a host of other prisoners" and absent evidence of widespread transmission in the defendants' facilities). In fact, at age 42, Mr. Johnson is still relatively young. According to the CDC, "[m]ore than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021). Therefore, I do not find that Mr. Johnson's age constitutes an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Olszewski*, No. 15-CR-364 (WHP), 2020 WL 2420483, at *3 (S.D.N.Y. May 12, 2020) (finding that a 41-year-old defendant did not belong to an "age group especially susceptible to

6

the virus").

Finally, Mr. Johnson argues that harsh conditions, insufficient COVID-19 safety protocols, and high risk of infection at FCI Schuylkill constitute an extraordinary and compelling reason for release. At the time that Mr. Johnson brought his motion, there was a significant outbreak of COVID-19 infections at FCI Schuylkill. Def.'s Mot. 1, ECF No. 515. Between December and late February, 264 inmates and staff tested positive for the virus. Def.'s Suppl. Mem. 4–5. By the time his counsel filed its memorandum in support on March 5, 2021, the outbreak was "slowing" but had "hardly disappeared." *Id.* As of March 30, 2021, there are seven inmates and ten staff members with confirmed active COVID-19 infections. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last updated Mar. 30, 2021). As Mr. Johnson notes, the fact that the recent outbreak is now under control does not guarantee that another outbreak will not occur in the future. Def.'s Reply 2–3, ECF No. 520. At FCI Fort Dix, for example, COVID-19 cases decreased from 238 on November 17, 2020 to 15 on December 18, 2020, but then rose again to 797 on January 11, 2021. *See United States v. Mathis*, No. 02-CR-891 (ARR), 2020 WL 6784136, at *2 (E.D.N.Y. Nov. 18, 2020); *United States v. Lytch*, No. 02-CR-891 (ARR), 2020 WL 7488880, at *2 (E.D.N.Y. Dec. 21, 2020); George Woolston, *'Clear and Present Danger': U.S. Rep. Kim Calls for FCI Fort Dix Lockdown as Cases Top 800*, Burlington Cnty. Times (last updated Jan. 12, 2021), http://www.burlingtoncountytimes.com/story/news/2021/01/11/u-s-rep-kim-calls-fci-fort-dix-lockdown-cases-top-800/6632119002. However, the risk of another outbreak, alone, is not enough to warrant Mr. Johnson's release because, as established above, he has not shown that he is at a particularly high risk of serious illness.

As to Mr. Johnson's conditions of confinement, FCI Schuylkill was still "on an almost continuous lockdown" as of March 5, 2021. Def.'s Suppl. Mem. 5. Mr. Johnson was "cut off

from humanity," confined to his cell other than ten-minute periods to shower three times per week, without access to recreation, the law library, phone, or e-mail. Def.'s Mot. 6. His counsel argues that the "emotional turmoil" of these "'enhanced' confinement" conditions "have more than punished him for his crime." Def.'s Suppl. Mem. 7. He also cites Mr. Johnson's rehabilitation efforts and support system outside of prison. *Id.* at 7–8. I acknowledge that BOP inmates have faced punishing conditions during lockdown, but these hardships do not set Mr. Johnson apart from the rest of the BOP inmate population and therefore do not, alone, constitute extraordinary and compelling reasons for his release.

## CONCLUSION

For the foregoing reasons, Mr. Johnson's motion is denied.

SO ORDERED.

Dated:  March 31, 2021
        Brooklyn, NY

        _/s/_____
        Allyne R. Ross
        United States District Judge