UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                      :
UNITED STATES OF AMERICA,                                             :        98-CR-860(7) (ARR)
                                                                      :
                                                                      :        NOT FOR ELECTRONIC
       -against-                                                      :        OR PRINT PUBLICATION
                                                                      :
                                                                      :
JAMES JOHNSON,                                                        :        **OPINION & ORDER**
                                                                      :
               *Defendant.*                                           :
                                                                      X
-------------------------------------------------------------------- X

ROSS, United States District Judge:

     Defendant, James Johnson, moves for a sentence reduction, also referred to as a motion for

compassionate release, on the grounds that his medical conditions— ███████████

███████—are extraordinary and compelling reasons for release pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i). The government opposes. For the reasons set forth below, I grant Mr.

Johnson's motion and reduce his twenty-five-year sentence to time served plus five years'

supervised release with special conditions as set forth in the annexed amended judgment.

## BACKGROUND

     Mr. Johnson is serving a sentence of twenty-five years' imprisonment for conspiracy to

commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); Hobbs Act robbery, in violation

of 18 U.S.C. § 1951(a); unlawful use of a firearm during a crime of violence, in violation of 18

U.S.C. § 924(c)(1); and murder through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1).

Am. Crim. J., ECF 450. He is currently incarcerated at the Bureau of Prisons ("BOP") medium-

security facility in Schuylkill, Pennsylvania ("FCI Schuylkill") and is scheduled to be released on

April 28, 2023. Gov't Opp'n to Def.'s Third Mot. Compassionate Release 3 ("Gov't Opp'n

Third Mot."), ECF No. 525-2.

***Mr. Johnson's Prior Motions for a Sentence Reduction***

Mr. Johnson has twice before moved this court for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). While I assume the parties' familiarity with these prior motions, I recount them insofar as they bear on Mr. Johnson's instant application. Mr. Johnson's first motion, brought *pro se* on April 27, 2020, sought relief on the grounds that his medical conditions and family circumstances warranted release. Def.'s First Mot. Compassionate Release 1 ("Def.'s First Mot."), ECF No. 506. Specifically, Mr. Johnson's motion was based on ███████████████████ ███████, as well as his need to take care of his elderly mother and disabled sister. *Id*. I denied that motion on May 5, 2020, finding that Mr. Johnson had not established extraordinary or compelling reasons for release. May 5, 2020 Op. & Order 4–5 ("May Op. & Order"), ECF No. 509. On December 16, 2020, Mr. Johnson moved for appointment of counsel to assist in filing a second motion, Def.'s Mot. Appoint Counsel, ECF No. 513; I granted this motion on December 21, 2020, Dec. 21, 2020 Dkt. Entry. Mr. Johnson subsequently moved *pro se* for a sentence reduction on January 21, 2021. Def.'s Second Mot. Compassionate Release ("Def.'s Second Mot."), ECF No. 515. His application was supplemented by his appointed counsel on March 5, 2021. Def.'s Suppl. Mot. Compassionate Release ("Suppl. Second Mot."), ECF No. 518. In his motion, Mr. Johnson asserted two new medical conditions meriting release: ███████████████████, which Mr. Johnson alleged can make a person more susceptible to infection, and ███████████████ ██████████████████████. *Id.* at 2–3, Ex. A. Mr. Johnson argued both conditions placed him at high risk of serious illness from COVID-19 infection. *Id.* Mr. Johnson further alleged that his age and the harsh conditions and insufficient COVID-19 safety protocols at FCI Schuylkill constituted additional extraordinary and compelling reasons for release. *Id.* at 4–5. I disagreed with Mr. Johnson and concluded that he had not satisfied his evidentiary burden. Mar. 31, 2021

Op. & Order 5 ("Mar. Op. & Order"), ECF No. 521. Of relevance, I concluded that although

████████████████████████████████████████████████, Mr. Johnson had not established that

he was diagnosed with ████████████████████████████████████████████████████

████. *Id.* at 5−6 ("Mar. Op. & Order"), ECF No. 521.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. In light of this

additional information, Mr. Johnson moves for a sentence reduction once more.[1] He incorporates

the additional bases for release asserted in his two prior motions: ████████████████████

his family circumstances, and, finally, the conditions at FCI Schuylkill.[2] The government opposes

based on, *inter alia*, more ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

### Mr. Johnson's Conviction and Prison Sentence

At the age of nineteen, Mr. Johnson was recruited to commit robberies by Ozem Thomas,

an older man in the business of enlisting teenagers to commit crimes in the East Flatbush

---

[1] Although Mr. Johnson describes his motion as a renewal of his second motion for compassionate release, I did not grant Mr. Johnson leave to renew his motion when I denied it. I therefore consider Mr. Johnson's latest motion a third motion for compassionate release.

[2] While Mr. Johnson's previous motions for compassionate release also referenced ████████ ██████████, Mr. Johnson no longer suffers from this condition. *See* Def.'s Reply to Gov't's Opp'n 2 ("Def.'s Reply"), ECF No. 526.

neighborhood of Brooklyn. *See* Letter in Anticipation of Resentencing 3 ("Resentencing Letter"), ECF No. 442; Resentencing Tr. 5:23−6:13, ECF No. 453. While Mr. Johnson had interacted with law enforcement only once before—at the age of sixteen and for an offense that resolved in a Youthful Offender adjudication—he was persuaded to join Mr. Thomas's enterprise by the promise of benefits. *See* Resentencing Letter 3; Resentencing Tr. 6:5−13. According to Mr. Johnson, Mr. Thomas would send his recruits to commit violent crimes, after which he would take them back to his house and reward them with drugs, alcohol, and money. Resentencing Tr. 5:23−6:4. During the commission of his first crime for Mr. Thomas, a robbery of New Clarkson Luncheonette, Mr. Johnson shot the store owner, Mr. Mohammed Ibrahim, once in the stomach; Mr. Ibrahim tragically died twelve days later. *See* Resentencing Letter 3−4. Mr. Johnson was arrested for his crimes on June 9, 1999, and has been incarcerated ever since. *Id.*

Following Mr. Johnson's convictions, his case took a series of procedural turns that ultimately led to his October 13, 2011 resentencing, over which I presided. *See* Gov't's Opp'n Third Mot. 1−2. In anticipation of his resentencing, Mr. Johnson, then thirty-three years old, submitted a letter to this court expressing remorse for the "terrible mistakes" he made as a teenager and conveying his intent to "make up for [his] wrongs" and use his "downfalls as [his] motivation to rise above and show [his] family and society that [he has] grown." Def.'s Letter in Anticipation of Resentencing 2 ("Def.'s Resentencing Letter"), ECF No. 445. I sentenced Mr. Johnson to twenty-five years' imprisonment. Am. Crim. J. 3.

Mr. Johnson appears to have taken rehabilitative steps during his time incarcerated. Now age forty-three, Mr. Johnson has served over twenty-two years in prison, *see S*uppl. Second Mot., Ex. 8, 1 ("Summary Reentry Plan"), ECF No. 518-8, more than ninety percent of his sentence, Suppl. Second Mot. 7. During this time, he enrolled in dozens of courses, earned certificates in

4

diverse coursework, including parenting, drug education, and communications, and worked as a compound orderly. *See* Summary Reentry Plan 1−2. Mr. Johnson has also maintained close relationships with members of his family while incarcerated, including his cousin, Rashuan Brumfield, and his mother, Cynthia Richardson. Suppl. Second Mot., Ex. 9, 2 ("Brumfield and Richardson Interviews"), ECF No. 518-9. Shortly after Mr. Johnson's arrest, his son, Jashaun, was born. *Id.* According to Mr. Brumfield, "[Mr. Johnson] has done the best he could to be involved in his son's life." *Id.* When Jashuan was a child, Mr. Johnson would speak to his son by telephone regularly and write to him frequently; Ms. Richardson, who raised Jashuan as a child, would bring Jashaun to visit his father "as often as possible." Resentencing Letter 5.

Mr. Brumfield and Ms. Richardson remain pillars in Mr. Johnson's life despite their decades apart. Before the COVID-19 pandemic began, Mr. Johnson would speak to his cousin by phone two to three times a month and would communicate with him through the BOP's TruLinks system several times each week. Brumfield and Richardson Interviews 2. While Mr. Johnson and his mother now infrequently speak because of protocols undertaken by FCI Schuylkill to mitigate COVID-19 transmission, they used to speak daily and text good night each evening. *Id.* Twice a month, Ms. Richardson and Mr. Johnson's younger sister, Lakeria, would also visit Mr. Johnson in person. *Id.* According to Ms. Richardson, Lakeria, who is intellectually and physically disabled, looks up to Mr. Johnson and considers him her confidante. *Id.* at 3. Upon Mr. Johnson's release and successful reintegration into his community, Ms. Richardson plans to grant him guardianship of Lakeria in the instance of Ms. Richardson's incapacitation. *Id.*

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such

relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of [their] facility, whichever is earlier";[3] (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons comport with "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). "The defendant bears the burden of demonstrating that he is eligible for compassionate release," and "district courts have broad discretion in deciding whether to grant or deny" the defendant's motion. *United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (citation and quotation marks omitted).

In determining what constitutes "extraordinary and compelling reasons," a district court has discretion to consider "the full slate" of arguments that defendants present to support a sentence reduction, "whether in isolation or combination." *United States v. Brooker*, 976 F.3d 228, 237, 238 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id*. at 237–38 (quoting 28 U.S.C. § 994(t) (emphasis added)).

Even if extraordinary and compelling reasons exist, they must be considered alongside the traditional 18 U.S.C. § 3553(a) sentencing factors. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

---

[3] The government does not dispute that Mr. Johnson has met the administrative exhaustion requirement.

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the United States Sentencing Guidelines] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

Lastly, "the [c]ourt . . . looks to, but does not consider itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *United States v. Hatcher*, No. 18-CR-454(10) (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting U.S.S.G. § 1B1.13(2)). The § 3142(g) factors largely duplicate those in § 3553(a), but they also include "whether the offense is a crime of violence," "the weight of the evidence against the [defendant]," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).

## DISCUSSION

## I.   Extraordinary and Compelling Reasons Warrant a Sentence Reduction.

[Redacted to protect Mr. Johnson's health information]

I find that Mr. Johnson has established extraordinary and compelling reasons for release.

███████████████████████████████████████████████████

███████████████████████████████████████████████████



The risk of severe illness from COVID-19 is exacerbated by Mr. Johnson's additional medical conditions—███████████████████████████████████—and his incarceration, *see Covid-19's Impact on People in Prison*, Equal Just. Initiative, https://eji.org/news/covid-19s-impact-on-people-in-prison/ (last updated Apr. 16, 2021) (reporting the American Medical Association's finding that incarcerated people are infected by COVID-19 at a rate more than five times higher than the nation's overall rate). While FCI Schuylkill has just two staff members with confirmed active COVID-19 infections as of December 3, 2021, *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Dec. 3, 2021), that the virus is now under control does not guarantee it will be contained in the future. At FCI Fort Dix, for example, cases among inmates decreased from 238 on November 17, 2020, to fifteen on December 18, 2020, but then rose again to 797 by January 11, 2021. *United States v. Mathis*, No. 02-CR-891 (ARR), 2020 WL 6784136, at *2 (E.D.N.Y. Nov. 18, 2020); *United States v. Lytch*, No. 02-CR-891 (ARR), 2020 WL 7488880, at *2 (E.D.N.Y. Dec. 21, 2020); George Woolston, *"Clear and present*

*danger": U.S. Rep. Kim calls for FCI Fort Dix lockdown as cases top 800*, Burlington Cnty. Times (Jan. 11, 2021), http://www.burlingtoncountytimes.com/story/news/2021/01/11/u-s-rep-kim-calls-fci-fort-dix-lockdown-cases-top-800/6632119002/.

This risk of reoccurrence is the natural outgrowth of carceral settings, where people "cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment." *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020). For example, in a January 2021 letter to the court, Mr. Johnson alleged that neither he nor his cellmate was removed to quarantine after his cellmate tested positive for COVID-19 in December 2020. Jan. 4, 2021 Letter from Def. 1 ("Def.'s Jan. Letter"), ECF No. 516. While the availability of vaccines has decreased COVID-19 transmission, the vaccines are "not 100% effective, and some fully vaccinated people will [still] become infected (called a breakthrough infection) and experience illness." *See Delta Variant: What We Know About the Science*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated Aug. 26, 2021). The risk of breakthrough infection is greater among incarcerated individuals than members of the general public given the congregate setting of prisons. *See Achieving a Fair and Effective COVID-10 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States* 4, https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (last updated Mar. 2, 2021) (describing the heightened vulnerability to COVID-19 faced by people in confinement, including incarceration).

For that reason, some courts have continued to find the risk of COVID-19 germane to their

analysis of extraordinary and compelling circumstances, even where, as here, the defendant is vaccinated, Gov't's Opp'n Third Mot. 4. *See, e.g.*, *United States v. Salemo*, No. 11-CR-65 (JSR), 2021 WL 4060354, at *6 (S.D.N.Y. Sept. 7, 2021) (agreeing that the defendant's age and medical condition put him at risk for "a severe case of COVID-19" even though he was vaccinated and had already recovered from COVID-19); *United States v. Sherrod*, No. 19-CR-20139 (AJT), 2021 WL 3473236, at *5 (E.D. Mich. Aug. 6, 2021) (finding the risk of COVID-19 relevant to the court's "extraordinary and compelling" determination because "recent research reflects that 1) breakthrough infections are becoming more and more frequent, 2) a significant number of breakthrough infections may lead to so-called 'long COVID,' and 3) people [] who have underlying conditions and reside in congregate settings are at highest risk for severe illness, despite vaccination"); *United States v. Sawyer*, No. 15-CR-160(1) (TWB), 2021 WL 3051985, at *2 (E.D.N.C. June 15, 2021) (finding a defendant with multiple underlying conditions had demonstrated extraordinary and compelling reasons despite vaccination in part because of concerns that COVID-19 vaccines are less effective for obese people and those with other severe health conditions); *cf. United States v. Perez*, No. 17-CR-512 (KMW), 2021 WL 2530272, at *2 (S.D.N.Y. June 20, 2021) (issued after vaccine rollout and denying the defendant's motion for other reasons, but finding that his obesity constituted an "extraordinary and compelling" reason because of COVID-19). I follow these courts' reasoning: In light of Mr. Johnson's health conditions, ███████████████████████████████████, Mr. Johnson could face serious illness and even death if infected with COVID-19. I therefore find that Mr. Johnson has provided sufficient evidence of extraordinary and compelling reasons for release.

## II.   The § 3553(a) Factors Support Releasing Mr. Johnson.

In addition to the extraordinary and compelling reasons present in Mr. Johnson's case, the

§ 3553(a) factors also indicate that Mr. Johnson should be granted compassionate release. It is indisputable that Mr. Johnson's offense was heinous. Within the broader context of Ozem Thomas's robbery scheme, Mr. Johnson agreed to commit violent offenses in his own neighborhood for the promise of alcohol, drugs, and money. Resentencing Tr. 5:23−6:13. His decision led to the killing of an innocent victim. On February 12, 1998, Mr. Johnson robbed Mr. Ibrahim's store and subsequently shot Mr. Ibrahim as Mr. Ibrahim chased Mr. Johnson and his co-robbers down the street. Resentencing Letter at 3−4. Mr. Ibrahim died in the hospital twelve days later from an infection. *Id.* at 4. In spite of these facts, "the gravity of [Mr. Johnson's] offense does not categorically preclude [me] from reducing his sentence." *United States v. Perez*, No. 02-CR-7 (JBA), 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021).

As an initial matter, I note Mr. Johnson's age—just nineteen years old—at the time of his offense. *See* Resentencing Letter 2. It is by now well accepted that "adolescent crime generally merits lesser punishment." *United States v. Ramsay*, No. 96-CR-1098 (JSR), 2021 WL 1877963, at *13 (S.D.N.Y. May 11, 2021). While I considered this fact when resentencing Mr. Johnson to twenty-five years' imprisonment, *see* Resentencing Tr. 4:16−19, it remains apposite to my current assessment of Mr. Johnson's history and characteristics. Mr. Johnson has spent more than half of his life imprisoned; now forty-three, he appears to be matured. He acknowledges the "terrible mistakes" he made as a teenager and submits that he has come "to value life" and learned "morals and principles." Def.'s Resentencing Letter. In support of his commitment to change, he points to his actions while incarcerated, which have included "going [through] drug programs, doing parenting classes, [attending] job fairs . . . or just going to programs to hear people speak about change and what's needed to better one's life." *Id.* Indeed, over the past twenty-two years, Mr. Johnson has participated in more than thirty courses—including history, relapse prevention, and a program titled,

"Starting Out Starting Over"—*see* Summary Reentry Plan 1−2, and maintained close ties with his family, *see generally* Brumfield and Richardson Interviews. I thus find that Mr. Johnson's "young age at the time of the offense[] and his current age . . . weigh in favor of his release." *United States v. Harris*, No. 97-CR-399(1) (MAK), 2020 WL 7861325, at \*14 (E.D. Pa. Dec. 31, 2020); *cf. Brooker*, 976 F.3d at 238 (noting that defendant's age at time of crime could weigh in favor of a sentence reduction); *Ramsay*, 2021 WL 1877963, at \*1, 17 (concluding the history and characteristics of a defendant convicted of murder in aid of racketeering "contraindicate a sentence of life imprisonment" because of the defendant's youth, evidence of rehabilitation, and upbringing); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) ("[I]n determining that [compassionate] release was appropriate . . . the [district] courts focused on the defendants' relative youth—from 19 to 24 years old—at the time of their offenses, a factor that many courts have found relevant under §3582(c)(1)(A)(i).").

In its opposition to Mr. Johnson's second motion for a sentence reduction, the government argued that reducing Mr. Johnson's sentence would be "particularly inappropriate given [Mr.] Johnson's history of disciplinary infractions from 2000 through 2019." Gov't's Opp'n to Def.'s Second Mot. Compassionate Release 12, ECF No. 519. While I agree that a disciplinary record while incarcerated could caution against a defendant's early release, I do not find Mr. Johnson's infractions dispositive here. Mr. Johnson has not incurred an infraction in over two years. *See* Summary Reentry Report 2. Moreover, preceding his convictions for the offense at issue, Mr. Johnson had no criminal convictions. His only prior involvement with law enforcement—when he was sixteen and was arrested for "being one of a large group of kids who stole another kid's money and backpack while they were at an arcade"—resulted in a Youthful Offender adjudication. *See* Resentencing Letter 3.Thus, I decline to find that Mr. Johnson's disciplinary record and prior

criminal history favor his continued detention.

Turning to the need for the sentence imposed to reflect the seriousness of Mr. Johnson's offense and provide him just punishment, Mr. Johnson's near completion of his term of imprisonment comports with this factor. Mr. Johnson has been incarcerated since June 9, 1999, *see* Resentencing Letter 3−4, and as of December 3, 2021, has served over twenty-two years of his twenty-five-year sentence, *see* Summary Reentry Plan 1 (reported on January 29, 2021, and listing time served as twenty-one years and seven months). More than eighteen months of this time have been served "in the challenging and no doubt harrowing conditions presented by COVID-19, conditions that demonstrably persist in his facility."[4] *United States v. Romero*, No. 15-CR-445(18) (PAE), 2021 WL 1518622, at *3–4 (S.D.N.Y. Apr. 16, 2021) (discussing the defendant's conditions of imprisonment at FCI Schuylkill, where Mr. Johnson is imprisoned). With good credit time, Mr. Johnson is scheduled to be released on April 28, 2023. Gov't's Opp'n Third Mot. 3. Mr. Johnson has thus served "virtually [his] entire custodial sentence," *United States v. Miller*, No. 15-CR-132(2) (VLB), 2020 WL 3187348, at *6 (D. Conn. June 15, 2020); he has under ten percent remaining. Considering this, I find that "a sentence of time served [and five years' supervised release] would still promote respect for the law and reflect the seriousness of his offense," *United States v. Rivera*, 466 F. Supp. 3d 310, 319 (D. Conn. 2020), thus providing specific and general

---

[4] In his second Motion for Compassionate Release, filed on January 25, 2021, Mr. Johnson averred that as of December 9, 2020, phone and email access had been suspended at FCI Schuylkill pending the facility's return to normal operations, and that with the exception of a ten-minute shower on Mondays, Wednesdays, and Fridays, Mr. Johnson was not allowed out from his cell. Def.'s Second Mot. 6. FCI Schuylkill is still operating at a COVID-19 operational level three, *FCI Schuylkill*, BOP, https://www.bop.gov/locations/institutions/sch/ (last visited Dec. 3, 2021), which is the most severe operational level and indicates that the medical isolation rate is at or more than 7 percent, the facility vaccination rate is less than 50 percent, or the community transmission rate is at or greater than 100 per 100,000 over the last seven days, *COVID-19 Operational Levels*, BOP, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Dec. 3, 2021). As of December 3, 2021, visiting at FCI Schuylkill is suspended. *See FCI Schuylkill*, BOP.

deterrence. *See Romero*, 2021 WL 1518622, at *3–5 (finding that granting early release to a defendant who had served all but four months of his sixty-nine-month sentence would "suffice to deter him from further criminality [and] give pause to others who might emulate his conduct"); *see also United States v. Williams*, No. 10-CR-657 (SJ), 2021 WL 1648182, at *3 (E.D.N.Y. Apr. 27, 2021) (concluding that releasing defendant, who had served 144 months of a 180-month sentence would not undermine general deterrence); *United States v. El-Hanafi,* 460 F. Supp. 3d 502, 510 (S.D.N.Y. 2020) ("Releasing Defendant 33 months early from a 180-month sentence in order to protect his life and health during an unprecedented global pandemic will not undermine general deterrence.").

Overall, the relevant sentencing factors support a sentence reduction. While Mr. Johnson's offense was very serious, his age at the time of its commission, the number of years he has spent incarcerated, and, critically, his nearing release date all favor early release.

### III.   Mr. Johnson's Sentence Reduction is Consistent with the Sentencing Commission's Policy Statements.

Finally, a sentence reduction must be consistent with the Sentencing Commission's policy statements. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). It is "the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *Hatcher*, 2021 WL 1535310, at *3 (quoting U.S.S.G. § 1B1.13(2)). While the § 3142(g) factors largely duplicate those in § 3553(a), they additionally include "whether the offense is a crime of violence," "the weight of the evidence against the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

Mr. Johnson's age at the time of the offense as compared to his current age and his strong

reentry plan suggest he is not a danger to his community. Mr. Johnson is now twenty-four years older than he was at the time of his offense; he has spent more of his life in prison than outside it. Mr. Johnson has grown while in custody: he has expressed remorse for his crime; conveyed his commitment to "mak[ing] up for [his] wrongs," Def.'s Resentencing Letter; participated in dozens of courses to better himself; and not had any infractions in over two years, Summary Reentry Plan 1−2. Moreover, at forty-three, Mr. Johnson is less likely to reoffend. *See* Kim Steven Hunt & Robert Dumville, U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive View* 5, App'x A-3(2016); *see also Harris*, 2020 WL 7861325, at *17 (finding that defendant's evidence of rehabilitation over twenty years incarcerated "combined with his relatively low likelihood of recidivating" demonstrated defendant was not dangerous). While Mr. Johnson's young age at the time he committed his crime does not change the seriousness of his conduct, I am satisfied that Mr. Johnson no longer poses a danger. *See Benjamin*,, 2020 WL 10356810, at *3 (finding release of defendant, who engaged in violent acts as member of a gang, to comport with U.S.S.G. § 1B1.13(2) because, *inter alia*, he committed the crimes as a teenager and had served nearly nine years in custody); *United States v. Jones*, 482 F. Supp. 3d 969, 985 (N.D. Cal. 2020) (agreeing that forty-seven-year-old defendant, who committed his crime at twenty-one, was no longer a danger to the community).

Finally, the release plan adduced by Mr. Johnson assures me that he will have the resources required to avoid a return to criminal conduct. Mr. Johnson has the promise of lodging and employment from his cousin, Mr. Brumfield, who owns a five-bedroom home in New Jersey and a large commercial janitorial company. *Id.* at 1−2. His mother, Ms. Richardson, is planning to move to New Jersey to be with Mr. Johnson. *Id.* at 3–4. A former corrections officer of twenty-five years, Ms. Richardson understands the assistance Mr. Johnson will require to transition back

to his community. *Id* at 3. Finally, Mr. Johnson has the support of his sister, Lakeria, and his extended family members, who have been in contact with Mr. Johnson throughout his sentence. *Id.* at 4.

## CONCLUSION

For the foregoing reasons, I grant Mr. Johnson's motion for a sentence reduction. I reduce his twenty-five-year sentence to time served plus five years' supervised release with special conditions as set forth in the annexed amended judgment.

SO ORDERED.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:          December 3, 2021
                Brooklyn, New York

17